UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
CHARLOTTE
Feb 09 2021
U.S. District Court
Western District of N.C.

UNITED STATES OF AMERICA,
Plaintiff

v.

Case No. 1:13-cr-00315-KAM
NCWD Case No. 3:20-cr-41

CORY LEE,
Defendant

## MOTION TO REQUEST TERMINATION OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C. SECTION 3583(E)(1)

Comes now Corey Lee, defendant, ("Lee" herein) to respectfully request this Court terminate the remaining portion of his supervised release.

In support thereof Lee puts forth the following.

### JURISDICTION:

This Court has jurisdiction pursuant to 18 U.S.C. Section 3583(e) to "terminate a term of supervised release...[at] any time after one year of supervised release pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation..." Id. See also, 18 U.S.C. Section 3564(c), both incorporating Federal Rules of Criminal Procedure (i.e. Rule 32.1(c)).

1

## RELEVANT FACTUAL BACKGROUND

Lee was arrested on November 25, 2013 and charged with conspiracy to possess with intent to distribute cocaine base and marijuana, in violation of 21 U.S.C. Section 846 and 841(b)(1)(B). At the arraignment the Court determined that Lee was neither a flight risk, nor a danger to the community and, as such, he was granted conditional bond. Lee remained on bond for 30 months, without incident. Lee ultimately pled guilty to the charge and on October 7, 2015 he was sentenced to 60 months of incarceration to be followed by 4 years of supervised release. Lee was originally sent to the Medical Center in Lexington, KY. Shortly thereafter, after positive programming and good conduct, Lee was sent to a prison camp as an "out custody" inmate (i.e. Federal Prison Camp, Lewisburg). While incarcerated Lee participated in numerous programs including the 500 Hour Residential Drug Abuse Program (RDAP). Lee had excellent work record and progress reports while incarcerated, and no incident reports. While incarcerated Lee began to mentor youths teaching entrepreneur principles.

On November, 21, 2018 Lee completed the incarceration portion of his sentence. And on March 25, 2019 Lee began serving his 4 year term of supervised release. Lee began working immediately while in the halfway house at Amazon. After Amazon, several months later, Lee opened his own transportation company C & S Transport, LLC. Lee's service transports goods and services throughout the Charlotte and surrounding area. In addition, to training youths, Lee has committed himself to being a benefit in his community by speaking to youths in Charlotte NC, about the dangers of crime and incarceration. Lee also spends all of his free time with his wife and children and siblings to rebuild his family ties with other members of his immediate family. Lee is a devout family man and has 5 children (ages 34 to 12) and 11 grandchildren. He is married to his wife Toya Lee. Lee has significant support from his family bth while incarcerated and since his return to society. After Lee opened his transport company, the pandemic (i.e. COVID-19) hit his community, as every other, very hard. Because he was

in the transportation business and having vehicles, Lee volunteered to transport sick persons to the local hospitals. Lee also began delivering groceries, medicines and other essentials to the elderly in his community who were unable to fend for themselves. Currently, the pandemic has resurfaced and Lee has again volunteered the services of his company. Lee provides this service free of charge and works additional hours, daily, to assist the community.

Lee has an opportunity to expand his transportation business by delivering interstate for Amazon, for whom he was formerly employed. However the restrictive nature of supervised release is currently prohibiting this opportunity. Lee is seeking to add a contract with Amazon and hire additional drivers to fulfill that potential contract.

Lee has completed approximately 23 months of his 48 month term of supervised release. His conduct has been excellent as he has had no incidents and complied with all of the terms and conditions of supervision. Lee has maintained gainful employment throughout his supervision doing training and mentoring youths. And he will resume his work with youth once the Coronavirus allows more human contact to occur. Lee' compliance and work in the community has prompted his Probation Officer, Ms. Downs, District of North Carolina Probation Office, to recommend that he put forth this petition for termination of the remainder of his supervised release. Based on the aforementioned Lee has received positive recommendations from his Probation Officer throughout his term of supervised release. As such, Lee has been classified as "low risk" throughout his supervised release term by Probation Officer Downs.

APPLICABLE LAW:

Title 18 U.S.C. Section 3583(e) directs courts to consider the purposes of sentencing set forth in 18 U.S.C. Section 3553(a)(1), (a)(2)(B), (a)(2)(D), (a)(4), (a)((5), (a)(6) and (a)(7) in deciding

3

whether to terminate a term of supervised release. The judicial conference has identified the following criteria to assess eligibility for early termination: "Officers should consider the suitability of early termination for offenders as soon as they are statutorily eligible. Here, Section 3583(e) sets the eligibility at "any time after the expiration of one year of supervised release." (3583(e)(1)). The general criteria for assessing whether a statutorily eligible offender should be recommended to the Court as an appropriate candidate for early termination are as follows:

1. stable community reintegration (i.e. residence, family, employment);

2. progressive strides toward supervision objectives and in compliance with all the conditions of supervision;

3. no history of violence (e.g. sexual assaults, predatory behavior or domestic violence);

4. no recent arrest or convictions (including unresolved pending charges), or ongoing, uninterrupted patterns of criminal conduct;

5. no recent evidence of alcohol or drug abuse;

6. no recent psychiatric episodes;

7. no identifiable risk to the safety of any identifiable victim; and

8. no identifiable risk to the public safety based on the Risk Assessment Prediction Index (RPI)

See, Guide to Judiciary Policy, Vol. 8E, Chapter 3, Section 30.10(b), "Early Termination" (Monograph 109) (revised 2010).

Pursuant to the policy "there is a presumption in favor of recommending early termination for supervised defendants after the first 18 months if they are not career offenders, sex offenders, or terrorist" and they are "free from moderate or high severity violations." Id. Section 30.10(g).

Courts have long advised early termination of defendants that meet the above criteria. "Terminating appropriate cases before they reach full term saves resources and allows officers to focus on offenders who continue to pose the greatest risk of recidivism." Honorable Robert Holmes Bell,

4

Chair of the Committee on Criminal Law of the Judicial Conference (Issuing a Memorandum to all United States District Judges, February 16, 2012). Judge Bell's Memorandum in 2012 noted that supervision cost approximately $3,938 per year, per case. This cost has increased exponentially.

Lastly, an Analysis by the Administrative Office of he Courts indicates that offenders who received early termination were "arrested less often, for less serious charges, and were sentenced to terms of imprisonment less often." Thus, "[f]rom a policy standpoint, it appears that the above criteria, when properly applied, does not jeopardize the public safety." Id.

Applying the above criteria to this case, Lee' file establishes that he meets this criteria, thus is a candidate for early termination. Lee has complied with all the terms and conditions of his supervised release. His Probation Officer can attest that he has had no problems throughout his 23 month period and has recommended early termination. Lee has proven that he is no threat to public safety and, conversely, has been an asset to the community through speaking to youths and volunteering his transportation services, free of charge, during the pandemic, past and present.

Moreover, Lee' age, (i.e. 62 years old, DOB January 24, 1969), compliance with all the conditions of supervised release, his additional and continuous work in the community and his exemplary prison record and overall commitment to being a better person, should serve as proof positive of Lee' commitment to becoming a better person and substantiate that he has no further interest, whatsoever, in crime and fulfills all the applicable Section 3553(a) factors favoring early termination.

Under parallel circumstances the case law favors early termination. See, United States v. Friend, Case No. 13-226 (W.D. PA 2019) (granting early termination of supervised release after Friend had served 21 of 36 months of supervision based on his age, compliance with all the conditions of supervision, although nothing exceptional, but meeting the criteria under Section 3553(a)

5

and "Probation Department agreeing with the request"); United States v. Harris, 258 F. Supp. 3d (D.C. Dist. Ct. 2017) (reducing term of supervised release from 120 months to 60 months, time served after defendant served 5 of his 10 years in compliance with all the standard terms and conditions of supervised release); United States v. Epps, 707 F.3d 337 (D.C. Cir. 2013) (holding that early termination is appropriate where defendant has complied with his standard conditions and relief is warranted under the Section 3553(a) factors); United Stats v. Harris, 689 F. Supp. 2d 692 (S.D.N.Y. 2010) (granting early termination to eliminate obstacles to professional advancement and employment after consideration of the 3553(a) factors)); United States v. Rentas, 573 F. Supp. 2d 801 (S.D.N.Y. 2008) (granting relief finding defendant "law abiding behavior and review of 3553(a) factors favored early termination");

Lastly, as a final note, the question has arisen regarding Lee's payment of his fine imposed in this case. The court and the government has never decided what portion of the money confiscated from Lee should be placed towards the fine. As such, Lee was never placed on IFRP payment schedule while in the BOP. And, Lee's Probation Officer never instituted a fine payment schedule, perhaps, for the same reasons. The matter is still pending as to what the actual amount is and what portion Lee must pay.

## CONCLUSION

For the foregoing reasons Lee respectfully requests this Court grant his request for early termination of his remaining term of supervised release.

Respectfully Submitted,

_Corey Lee_
Corey Lee,
10129 Elizabeth Crest Lane
Charlotte, NC 28277

2-9-2021
Dated

7

Case 3:20-cr-00041-RJC-DCK   Document 2   Filed 02/09/21   Page 7 of 8

## CERTIFICATE OF SERVICE

I, Cory Lee declare that on this  9  day of  febuary , 2021 I served a copy of a Motion for Termination of Supervised Release to the following parties:

U.S. Attorneys Office
Western District of North Carolina
227 W. Trade Street
Charlotte, NC 28202

I make this declaration with the understanding of the penalty of perjury, pursuant to 28 U.S.C. Section

1746.

Dated this  9  day of  febuary , 2021
Cory Lee, pro se
10129 Elizabeth Crest Lane
Charlotte, NC 28277